UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VELMA WILSON and BARBARA PORTAL,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>GORDON & WONG LAW GROUP, P.C., and DOES 1 THROUGH 100, inclusive,<br><br>　　　　　　Defendants. | No. 2:13-cv-00609-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiffs Velma Wilson and Barbara Portal ("Plaintiffs") seek to recover from Defendant Gordon & Wong Law Group, P.C. ("Defendant"), for violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq., violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and fraud. The gravamen of Plaintiffs' complaint is that Defendant improperly attempted to collect on a debt owed by Plaintiffs, and then fraudulently purported to negotiate a settlement of that debt. Compl., Oct. 11, 2013, ECF No. 25.

///

///

///

///

1

Presently before the Court is Defendant's Motion to Dismiss ("Motion") Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6)[1], and for sanctions.  Mot., Oct. 25, 2013, ECF No. 26.  For the reasons set forth below, Defendant's Motion is granted in part and denied in part.[2]

## BACKGROUND[3]

"Sometime during or prior to 2012," Plaintiffs established an account with HSBC ("the account").  Plaintiffs incurred financial obligations on this account, on which they later defaulted.   On August 24, 2007, Plaintiffs retained the Palmer Firm, P.C. ("the Palmer Firm") to represent them regarding this debt, and at some point prior to January 6, 2011, Defendant was retained by HSBC to collect from Plaintiffs.  On January 6, 2011, the Palmer Firm sent a letter of representation to Defendant, informing Defendant that Plaintiffs were represented by counsel regarding the account, and instructing Defendant to cease its communications with Plaintiffs.

On January 18, 2011, Defendant called the Palmer Firm to discuss the account. According to Defendant, it was willing to settle the account, on which it claimed Plaintiffs owed $2,632.15.  However, Defendant also made additional attempts to collect directly from Plaintiffs when, that same day, one of its employees placed a phone call to Plaintiffs, and later, on February 16, 2011, Defendant mailed a collection letter to Plaintiffs.

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

[3] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Second Amended Complaint.  ECF No. 25.

As a result of these allegedly illegal communications with Plaintiffs, on June 21, 201, the Palmer Firm sent a demand letter to Defendant.  Thereafter, Defendant's employee, Mitchell Wong, communicated with the Palmer Firm to attempt to settle the claim against Defendant.  From Plaintiffs' perspective, however, Mr. Wong was merely trying "to make it look like Defendants wanted to resolve the issues in the demand letter." Compl. at 11 (emphasis added).

On July 27, 2011, Defendant's employee Andrew Ford sent an email to Plaintiffs, agreeing to pay Plaintiffs $1,200.00 to resolve Plaintiffs' claim.  Plaintiffs allege that Ford misled Plaintiffs by indicating Defendants would settle the demand for $1200, because Defendants did not in fact provide any money to Plaintiffs.  Pursuant to Defendants' request, on August 4, 2011, the Palmer Firm sent a release to Defendants for execution and payment of the settlement amounts.  The Palmer Firm continuously followed up with Defendants to get the agreed upon release signed and the settlement paid.  On January 27, 2012, Mitchell Wong emailed the Palmer Firm, advising, "I have been out of the office since August due to illness.  I will order the checks."  Thus, according to Plaintiffs, weeks prior to the expiration of the statute of limitations, Defendant "tricked Plaintiff into believing that the need to expend money to file suit was not necessary because the matter was resolved." Compl. at 13.  However, not only did Plaintiffs never receive a check, but Defendant also never informed Plaintiffs there would be no settlement.

On June 11, 2012, Defendant requested a power of attorney, which Plaintiffs provided one month later.  After that, Defendant stopped communication with the Palmer Firm altogether.

Plaintiffs thereafter initiated this action in state court.  On March 29, 2013, Defendant removed the case to federal court pursuant to this Court's federal question jurisdiction, and filed a Motion to Dismiss pursuant to Rule 12(b)(6).  On June 19, 2013, the Court granted Defendant's Motion to Dismiss with leave to amend.

///

///

On July 3, 2013, Plaintiffs filed a First Amended Complaint, which Defendant again moved to dismiss. The Court granted Defendant's subsequent Motion to Dismiss, and dismissed that complaint with final leave to amend. On October 11, 2013, Plaintiffs filed the operative Second Amended Complaint, which Defendant now moves to dismiss. Plaintiff filed a timely opposition.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

///

///

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

# ANALYSIS

A.    **Motion to Dismiss**

    1.    **Incorporation of Documents and Requests for Judicial Notice**

Plaintiffs attached numerous documents to the Second Amended Complaint. "If documents are physically attached to the complaint, then a court may consider them if their 'authenticity is not contested' and 'the plaintiff's complaint necessarily relies on them.'" Goodwin v. Executive Tr. Servs., LLC, 680 F. Supp. 2d 1244, 1250 (D. Nev. 2010) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). Plaintiffs' Second Amended Complaint relies in large part on the communications between Plaintiffs, Defendant, and Plaintiff's counsel, and Defendant does not contest the authenticity of these documents. Accordingly, the Court may consider the documents attached to Plaintiff's Second Amended Complaint in ruling on the instant Motion.

Additionally, Defendant and Plaintiffs each attach documents to the Motion, Opposition, and Reply. "Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Indeed, Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, the Ninth Circuit has held "that documents whose content are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on separate grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

///

1  The document "may be incorporated by reference into a complaint if the plaintiff refers
2  extensively to the document or the document forms the basis of the plaintiff's claim."
3  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Consideration of such
4  documents "does 'not convert the motion to dismiss into a motion for summary
5  judgment.'"  Branch, 14 F.3d at 454 (quoting Romani v. Shearson Lehman Hutton, 929
6  F.2d 875, 879 n.3 (9th Cir. 1991)).
7      Here, Defendant attaches the Declaration of Tomio B. Narita in Support of
8  Defendant's Motion to Dismiss.  Narita Decl., Oct. 25, 2013, ECF No. 26-1.  This
9  document may not be considered in deciding the Motion to Dismiss, as the Complaint
10 does not refer to this document at all, and consideration of such a declaration on a
11 motion to dismiss would convert the motion to one for summary judgment.  See Ritchie,
12 342 F.3d at 908.  This document is therefore not incorporated by reference, and will not
13 be considered by the Court in deciding Defendant's Motion to Dismiss.
14     Defendant also requests that the Court take judicial notice of an obituary for
15 Jason C. Wilson which was published in the Lodi News-Sentinel from October 28, 2010,
16 through November 4, 2010.  RJN, Oct. 25, 2013, ECF No. 26-2.  "[Federal Rule of
17 Evidence] 201(b) provides that judicial notice must be "one not subject to reasonable
18 dispute in that it is either (1) generally known within the territorial jurisdiction of the trial
19 court or (2) capable of accurate and ready determination by resort to sources whose
20 accuracy cannot reasonably be questioned."  Ritter v. Hughes Aircraft Co., 58 F.3d 454,
21 458 (9th Cir. 1995) (quoting Fed. R. Evid. 201(b)).  "[A] court may take judicial notice of
22 information in newspaper articles."  U.S. v. Callum, 107 F.3d 878, *2 (9th Cir. 1997)
23 (citing Ritter, 58 F.3d at 458-59).  Other district courts have taken judicial notice that a
24 person is deceased based on an obituary published in a newspaper.  See United States
25 v. Beeman, 1:10-CV-237-SJM, 2011 WL 3021789 (W.D. Pa. July 22, 2011) ("Based
26 upon the aforementioned April 7, 1997 obituary, this Court will take judicial notice of the
27 fact that Defendant Howard Beeman is, in fact, deceased.)  Accordingly, the Court takes
28 judicial notice of Jason Wilson's obituary.

1         Plaintiffs also attach certain documents to their Opposition.  Opp'n at 10-21.  First,
2    Plaintiff attaches an email from Andrew Ford to William Campbell, sent on July 27, 2011.
3    Id. at 11.  This email is already included as part of Plaintiff's Complaint, and therefore the
4    Court need not incorporate it again by reference.  Next, Plaintiff attaches emails, also
5    between Andrew Ford to William Campbell, from August 11, 2011, and from August 11,
6    2011, and August 24, 2011.  Id. at 13, 21.  None of these emails are referenced at all in
7    the Complaint, let alone referenced "extensively."  Ritchie, 342 F.3d at 908.  Accordingly,
8    these emails may not be incorporated by reference.

9         Finally, Plaintiff includes a "Settlement Agreement and General Release" between
10   Plaintiff Velma Wilson and Defendant.  Opp'n at 15-19.  This Settlement Agreement is
11   signed and dated August 22, 2011.  Defendant also attaches to its Reply a "Settlement
12   Agreement and General Release" between Jason C. Wilson and Defendant.  Reply Ex.
13   A, Dec. 12, 2013, ECF No. 28.  Plaintiffs' Complaint references "releases" sent to
14   Defendant on August 4, 2011, and attached to the Complaint is an email from William
15   Campbell to Andrew Ford, stating "I have attached releases for your review . . . ."
16   Compl. at 47.  Additionally, the emails attached to the Complaint, including the email
17   regarding releases sent on August 4, 2011, contain the subject line: "In re: Jason and
18   Velma Wilson."  Given these references to the releases in the Complaint and documents
19   attached thereto, the Court finds that the documents titled "Settlement Agreement and
20   General Release" submitted by both Plaintiff and Defendant have been incorporated by
21   reference into the Complaint.
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

## 2.    FDCPA Statute of Limitations

Defendant takes issue with Plaintiffs' FDCPA claim on statute of limitations grounds. The FDCPA states "[a]n action to enforce any liability . . . may be brought . . . within one year from that date on which the violation occurs." 15 U.S.C. § 1692k(d). "Under Ninth Circuit precedent, the FDCPA limitations period 'begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" Huy Thanh Vo v. Nelson & Kennard, No. CIV. 5-12-2537 LKK/CKD, 2013 WL 1091207, at *3 (E.D. Cal. Mar. 15, 2013) (quoting Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 940 (9th Cir. 2009)).

As stated in the Court's prior orders, the correspondence allegedly violating the FDCPA was sent on February 16, 2011, and thus Plaintiffs knew of the injury providing the basis for their FDCPA claim on that date. The statute of limitations for this claim therefore expired on February 16, 2012. However, Plaintiffs did not file the instant lawsuit until February 13, 2013. Defendant again argues that, as a result, Plaintiffs' FDCPA claim is time barred and therefore fails as a matter of law. Plaintiffs again contend that equitable tolling applies because Defendant tricked Plaintiffs into letting the statute of limitations expire by telling Plaintiffs that the case was settled when Defendant had no real intention of settling.

The Ninth Circuit has held that equitable tolling is applicable to the FDCPA. Mangum, 575 F.3d at 939-40. Equitable tolling is extended "only sparingly" by the courts, and it is generally awarded in two situations: (1) "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," or (2) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). Although Plaintiffs have alleged additional facts in an attempt to show that Defendants "tricked" Plaintiffs into letting the deadline expire, the Court again finds equitable tolling unwarranted in this case.

1   As set forth in the Court's prior orders, courts are hesitant to apply equitable
2   tolling in situations in which the plaintiff has the information necessary for the filing of a
3   claim and does not do so as a result of ongoing negotiations with the defendant. See
4   Souphalith v. Astrue, No. 06-CV-01410-H (AJB), 2009 WL 35471 (S.D. Cal. Jan. 5,
5   2009) (narrowly applying equitable tolling solely on the basis of defendant's past waiver
6   of the timeliness requirement after settlement negotiations); Hawaii v. United States, 173
7   F. Supp. 2d 1063 (D. Haw. 2000) (holding equitable tolling inapplicable as defendant's
8   intent to engage in settlement negotiations is not a reasonable justification for plaintiff's
9   delay in bringing suit). Here, although Defendant represented in email communications
10  on July 27, 2011, that the case was settled, and Plaintiffs sent releases to Defendant on
11  August 4, 2011, Defendant never signed the releases and Plaintiff Velma Wilson never
12  received a settlement check. Plaintiffs apparently waited nearly six months without
13  hearing from Defendants regarding the supposed settlement, and yet allowed the
14  deadline to file their instant claims pass. Under these circumstances, Plaintiffs'
15  continued reliance on Defendant's representations of settlement, as well as Plaintiffs'
16  counsel's failure to file action to protect their clients' interests, is unreasonable. Rather
17  than suggesting that Defendant "tricked" Plaintiffs, these facts indicate that Plaintiffs'
18  counsel acted naively, and even foolishly, by allowing the filing deadline to pass.
19  Accordingly, the Court finds that equitable tolling is not applicable in this case,
20  and Defendant's Motion is granted with respect to Plaintiffs' FDCPA claim.
21
22   **3.   State Law Causes of Action**
23
24  Pursuant to 28 U.S.C. § 1367(c)(3), if a federal district court has dismissed all
25  claims over which it has original jurisdiction, it may, in its discretion, dismiss without
26  prejudice supplemental state law claims brought in the same action. 28 U.S.C.
27  § 1367(c)(3); see Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en
28  banc).

Several factors are considered in determining whether the Court should exercise jurisdiction over the state law claims. These factors include economy, convenience, fairness, and comity in deciding whether to retain jurisdiction over pendent state claims. Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1309 (9th Cir. 1992) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 353 (1988)). Although the court is not required to dismiss the supplemental state law claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie–Mellon Univ., 484 U.S. at 350 n.7; see also Schneider v. TRW, Inc., 938 F.2d 986, 993-94 (9th Cir. 1991).

Here, the Carnegie-Mellon factors weigh in favor of remand. Only state law claims remain, and the case has yet to proceed to trial. Judicial economy does not favor continuing to exercise supplemental jurisdiction. Nor do the comity and fairness factors weigh in favor of exercising supplemental jurisdiction since "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Plaintiff's state law claims are therefore dismissed without prejudice under 28 U.S.C. § 1367(c).

### B. Request for Sanctions

The Supreme Court has "reinforced the longstanding principle that courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107-08 (9th Cir. 2002) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)) (internal quotation marks omitted).

///

"Significantly, under [the Ninth Circuit's] controlling cases, conduct that is 'tantamount to bad faith' is sanctionable." Id. (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980)). "In sum, 'sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith. Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose. Therefore . . . an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, . . . are sanctionable under a court's inherent power.'" Id. (quoting Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001)). "The imposition of sanctions . . . transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's [misbehavior]." Id. (quoting Chambers, 501 U.S. at 46).

Defendant asserts that Plaintiffs' counsel, William Campbell of the Palmer Firm, fraudulently tried to negotiate a settlement on behalf of Jason Wilson, who had predeceased any alleged violation by Defendant. Id. at 22. Defendant also contends, "Plaintiffs counsel was given two separate opportunities to file an amended complaint that addressed the Court's orders, yet counsel insisted on filing the same complaint time and again." Id. Thus, Defendant contends that Plaintiffs' counsel knew the case had no merit when it was filed. Id.

First, the fact that Plaintiffs were unsuccessful in stating a claim does not indicate that Plaintiffs' counsel acted in bad faith. Although all three complaints filed in this case were similar, Plaintiffs attempted each time to add facts sufficient to show that equitable tolling was warranted. That the Court repeatedly found equitable tolling unwarranted, and that Plaintiffs failed to state a claim, does not demonstrate that Plaintiffs' counsel acted in bad faith.

///

1 Indeed, "the granting of a motion to dismiss the complaint for failure to state a claim, or
2 the granting of a summary judgment against the pleader is not dispositive of the issue of
3 sanctions." Riverbend Ranch Golf Course v. County of Madera, No. CV-F97-5550
4 REC/DLB, 2005 WL 3591906, *1 (E.D. Cal. Dec. 29, 2005).  The Court finds that
5 counsel's conduct in this regard in no way approaches the level of bad faith or
6 recklessness necessary for the Court to impose sanctions.  There is no evidence of any
7 misstatements of facts or law by Plaintiffs, nor is there any indication, as in the cases to
8 which Defendants cite, that Plaintiffs asserted their arguments to gain an advantage in
9 other litigation.  See Mot. at 21 (citing Fink, 239 F.3d at 994; In re Itel Secs. Litig., 791
10 F.3d 672, 675 (9th Cir. 1986)).  Accordingly, the Court declines to exercise its inherent
11 power to award sanctions for this conduct.

12       Defendant also contends that William Campbell fraudulently attempted to
13 negotiate a settlement on behalf of Jason Wilson, who is deceased.  However, Plaintiffs
14 in this case are Velma Wilson and Barbara Portal.  Jason Wilson is not listed as a
15 Plaintiff, nor is he mentioned anywhere in the Complaint.  His name appears only in the
16 subject line of the emails attached to the Complaint regarding the parties' never-finalized
17 settlement agreement.  Plaintiffs do not seek to enforce this settlement agreement as to
18 either Velma Wilson or Jason Wilson.  Rather, Plaintiffs cite to those settlement
19 discussions to support their claim that equitable tolling applies to the claims of Velma
20 Wilson and Barbara Portal.  Whether Plaintiffs' counsel acted in bad faith in negotiating a
21 settlement which was never finalized is simply not an issue for this Court to decide.  The
22 Court declines to act as an arbiter in determining what exactly happened in these
23 settlement negotiations on behalf of Jason Wilson, as they took place well before this
24 action was filed, involve a third party to this case, and do not bear on the merit of
25 Plaintiffs' claims.
26 ///
27 ///
28 ///

1  In sum, no grounds sufficient to justify sanctions are before the Court.  Mr.
2  Campbell's actions have not interfered with the Court's ability "to manage [its] own affairs
3  so as to achieve the orderly and expeditious disposition of [its] cases." <u>Chambers</u>, 501
4  U.S. at 43 (quoting <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 630–631 (1962)).  It is true that
5  the Court's inherent power to sanction "reaches both conduct before the court and that
6  beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt
7  power was not . . . merely the disruption of court proceedings[, but] [r]ather,
8  . . . disobedience to the orders of the Judiciary, regardless of whether such disobedience
9  interfered with the conduct of trial." <u>Id.</u> at 44 (quoting <u>Young v. United States ex rel.
10 Vuitton et Fils S.A.</u>, 481 U.S. 787, 798 (1987)).  However, "[b]ecause of their very
11 potency, inherent powers must be exercised with restraint and discretion." <u>Id.</u> at 44
12 (citing <u>Roadway Express</u>, 447 U.S. at 764).  Here, the Court exercises its restraint and
13 discretion, and Defendant's request for sanctions is denied.
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

14

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss and Request for Sanctions, ECF No. 26, is GRANTED IN PART and DENIED IN PART. Specifically:

1. Defendant's Motion to Dismiss is GRANTED and Plaintiffs' FDCPA cause of action is DISMISSED WITH PREJUDICE.
2. The Clerk of the Court is ordered to REMAND Plaintiffs' remaining state law causes of action to the Superior Court of California, County of San Joaquin.
3. Defendant's Request for Sanctions is DENIED.

IT IS SO ORDERED.

Dated: December 23, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT